J. Rene Harris, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 36353. Filed August 31, 1954.

---

*J. Rene Harris, pro se.*
*Michael J. Clare, Esq.,* for the respondent.

1120

OPINION.

TURNER, *Judge:* The primary question is whether petitioner's serving as postmaster of the Taylorsville post office was a trade or business carried on by him, which trade or business did "not consist of the performance of services as an employee" within the meaning of section 22 (n) (1) of the Internal Revenue Code of 1939.[1]   If it was such a trade or business, petitioner was within his rights in deducting from gross income, for purposes of arriving at adjusted gross income, all of the above expenditures attributable to such business which, under section 23 of the 1939 Code, would have been allowable deductions from gross income for the purpose of computing net income.  If, on the other hand, the business of serving as such postmaster was a trade or business which did consist of the performance of services by him as an employee, not only is he not entitled to deduct the said expenditures from gross income, in arriving at adjusted gross income, but neither is he entitled to deduct the said expenditures under section 23, even though they were of such character as to be so deductible, the reason being that in making his return, he elected to take in lieu of

---

[1] SEC. 22. GROSS INCOME.

(n) DEFINITION OF "ADJUSTED GROSS INCOME."—As used in this chapter the term "adjusted gross income" means the gross income minus—

(1) TRADE AND BUSINESS DEDUCTIONS.—The deductions allowed by section 23 which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee;

those deductions, the standard deduction provided in section 23 (aa) (1) (A) of the 1939 Code,[2] and that election is thereafter irrevocably binding upon him under section 23 (aa) (3) (C).

That the trade or business carried on by the petitioner did consist of the performance of services is, in our opinion, established by the facts, and we do not understand that he contends otherwise. It is his claim, however, that he was not an employee of the Government, that he rendered no services as such, and accordingly was not barred under section 22 (n) (1) from taking the deductions claimed, for the purposes of arriving at his adjusted gross income. He was not represented by counsel, but undertook to present his own case, and his interpretation of the law and application thereof to the facts are not as definite and clear as we would have liked. His contention that he was not an employee is based first on the proposition that section 851, chapter 23, Title 39, of the United States Code, which has to do with personnel of the postal service, "expressly excludes a second class postmaster" in defining the term "employee," and that Congress, in enacting the revenue laws, could not have intended that he, as such second class postmaster, should be regarded as an employee for the purposes here. In addition, there is some indication in the discussion in his brief that he considers his status to have been that of an independent contractor, or, at least, that it was comparable thereto. There is also some indication that he regarded himself as an officer of the United States Government, as distinguished from an employee, and, for that reason, that the services rendered by him as postmaster of the Taylorsville post office may not be said to have been rendered by him "as an employee," under section 22 (n) (1).

Aside from the well established principle that a particular statute is to be construed and applied according to its own terms, intent, and purposes, the provisions of section 851 of the Postal Service Code, themselves, demonstrate that the definition therein of the term "employees" is limited to the particular purposes of that code and is of no significance or force in the instant case. By that section, it is provided that "The term 'employees' wherever used in this chapter

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
    (aa) OPTIONAL STANDARD DEDUCTIONS FOR INDIVIDUALS.—
        (1) ALLOWANCE.—In the case of an individual, at his election a standard deduction as follows :
           (A) Adjusted Gross Income $5,000 or More.—If his adjusted gross income is $5,000 or more, the standard deduction shall be $1,000 or an amount equal to 10 per centum of the adjusted gross income, whichever is the lesser, except that in the case of a separate return by a married individual, the standard deduction shall be $500.

        *       *       *       *       *       *       *

        (3) METHOD AND EFFECT OF ELECTION.—
        *       *       *       *       *       *       *
           (C) If the taxpayer does not signify, in the manner provided by subparagraph (A) or (B), his election to take the standard deduction, it shall not be allowed. If he does so signify, such election shall be irrevocable.

shall include officers, supervisors, special-delivery messengers in offices of the first class, and all other employees paid from field appropriations of the postal service, other than postmasters, skilled-trades employees of the mail-equipment shops, job cleaners in the first- and second-class post offices, and employees who are paid on a fee or contract basis." By explicit language, the term "employees," as defined in the said section, was specifically limited to its use in chapter 23 of the Postal Service Code, which chapter has to do with the reclassification of the personnel of the postal service, and it is also to be noted, in passing, that some of the personnel whom the section itself identified as *employees* were included in the term "employees," as defined, while others so identified were excluded.

It is our further conclusion on the facts that the petitioner was not an independent contractor. Certainly the post office operation itself was not his business, but that of the United States. He was, to say the least, a member of the salaried personnel of the Government. The performance of his duties was subject to rules and regulations prescribed by his superiors, and he did not have that freedom in the exercise of discretion and judgment in the conduct of the post office operations which is inherent in the status of an independent contractor. See *Raymond E. Kershner*, 14 T. C. 168, wherein it was concluded that the taxpayer's business was that of rendering services as an employee, and not as an independent contractor, and *Irene L. Bell*, 13 T. C. 344, where it was found that the business of the taxpayer was that of an independent contractor, and not that of an employee. In the *Kershner* case, we quoted from *A. P. Dowell, Jr.*, 13 T. C. 845, to the effect that an independent contractor is usually one who contracts to do certain work according to his own methods and without being subject to the control of the employer, except as to the product or result of his work. That a postmaster of a United States post office in the performance of his duties as such does not enjoy such latitude or freedom from control and supervision, does not in our opinion require further elaboration.

As to whether or not a Government officer, as distinguished from an employee and whose business likewise consists of the performance of services, would as a matter of law be permitted or denied the benefits of section 22 (n) (1) in arriving at his adjusted gross income, the respondent has not taken a position, but seeks disposition of the matter on the ground that, whereas an officer exercises "discretion and control," as distinguished from the performance of duties which are wholly prescribed under rules and regulations of the executive branch of the Government, the duties of the petitioner were ministerial in nature, and were accordingly those of an employee. Certainly there is nothing in section 22 (n) (1) itself to indicate that Congress, in

enacting that section, had any thought or intent that the test, as to whether the salaried personnel of the Government, whose business was that of rendering personal services, would or would not be entitled to the benefits of that section, should be whether, strictly or technically speaking, they happened to be employees of the Government or officers.

The concept of adjusted gross income was introduced into the Internal Revenue Code of 1939 as section 22 (n) by the Individual Income Tax Act of 1944, and some understanding of the meaning of its provisions and the intent of Congress with respect thereto is to be had from the reports of the congressional committees. In Senate Report No. 885, 78th Congress, 2d Session, the Committee on Finance said, in part:

Fundamentally, the deductions thus permitted to be made from gross income in arriving at adjusted gross income are those which are necessary to make as nearly equivalent as practicable the concept of adjusted gross income, when that concept is applied to different types of taxpayers deriving their income from varying sources. Such equivalence is necessary for equitable application of a mechanical tax table or a standard deduction which does not depend upon the source of income. For example, in the case of an individual merchant or store proprietor, gross income under the law is gross receipts less the cost of goods sold; it is necessary to reduce this amount by the amount of business expenses before it becomes comparable, for the purposes of such a tax table or the standard deduction, to the salary or wages of an employee in the usual case. * * *

At another place in the report, it was said:

The only expenses in connection with his employment which are deductible by an employee electing the standard deduction, as distinguished from an individual entrepreneur, are those which he incurs for travel, meals, and lodging while away from home, or those for which he is reimbursed directly by a separate payment by his employer. Thus, for example, an employee who incurs expenses for his employer for which he is reimbursed or for which he receives a per diem remuneration, would include in his gross income the amount of the per diem or reimbursement but would be entitled to deduct the amounts paid out by him for expenses.

From a reading of section 22 (n) (1), and in light of what was said in the portions of the committee report quoted above, we think it apparent that Congress in that section was making provision for the deduction from gross income, in arriving at adjusted gross income, of expenditures made in a trade or business, even though the trade or business might consist of the rendering of personal services, wherein the enterprise or business was not only the independent operation of the taxpayer but the expenditures, in addition to being such as would reasonably be required in those operations, would also be a substantial factor in earning and enhancing the profits anticipated from the enterprise, and that it intended to and did exclude therefrom a trade or business consisting of the performance of personal services where the services were controlled, supervised, or directed and rendered in the operations of another and the quantum of the earnings or profits,

such as salaries or wages, was not so likely to be influenced by, or so directly dependent upon, such expenditures as might be made by the taxpayer as a condition of or incident to his employment.

The position of postmaster, whether of the first, second, or third class, is, and from as early as 1938 has been, a position "without term" in the classified civil service, section 31a, Title 39, of the United States Code, and while appointments are made by the President, by and with the advice and consent of the Senate, they are made by promotion from within the postal service, or by competitive examination in accordance with the civil service acts and rules. Secs. 31a and 31b, 39 U. S. C. The compensation for the services rendered is in the form of an annual salary fixed by the Postmaster General but within the ranges, as to amount, specified by statute. Broadly speaking, the business of the petitioner was that of managing the Taylorsville post office for the Government; it was that of performing the services required and necessary in supervising and directing the handling of the mail, parcel post, money orders, and the like to and from that post office; and while it was anticipated and expected that he would exercise sound personal discretion and judgment in the performance of his duties as such postmaster, his functioning was under the Postmaster General and the rules and regulations promulgated by him covering the operation of post offices, particularly post offices of the second class. He was required to keep records of the business done, in such form as the Postmaster General should direct, and at such times and in such form as should be prescribed, and he was required to render accounts "of all moneys received or charged by him or at his office, for postage, rent of boxes or other receptacles for mail matter," for the delivery of mail matter, "or for the performance of any other function connected with his office." The Postmaster General had the authority to require a certification of each account, to the effect that the statements in the account were true, that petitioner had not knowingly delivered, or permitted to be delivered, any mail on which the postage was at the time not paid, that the account exhibited truly and faithfully the entire receipts collected at his office, and which, by due diligence, could have been collected, and that the credits claimed were just and right. Secs. 41, 42, and 43, 39 U. S. C. In serving as postmaster of the Taylorsville post office, petitioner was required to report, and did report, regularly to the district officer in Louisville. As previously noted, the post office itself was not the petitioner's business, and the employees were not his employees, but those of the Government. His business with respect to the employees was that of supervising and directing them for and on account of the Government in the performance of their duties.

On the basis and in the light of the considerations stated, it is our opinion, and we conclude, that the business of the petitioner

in acting and serving as postmaster of the Taylorsville post office consisted of the rendering of services by him "as an employee" within the meaning of section 22 (n) (1), *supra*, and that such is the case, even if for other purposes he may with nicety be referred to as an officer of the Government rather than an employee. It is true that, as a condition of his employment, he was required to post a personal bond and personally pay the premium thereon, and was also required to provide lockboxes for use in the post office, so long as they were not furnished by the Government, and did make certain other expenditures as an incident to his employment for which he was not reimbursed, but those expenditures, in our opinion, were not such as to change his status as postmaster from that of an employee within the meaning of the statute, to that of an independent contractor or entrepreneur, as was envisioned by Congress in enacting the law. In making such expenditures, he was in our opinion in a position no different from other employees who, as an incident to or condition of their employment, were required to supply their own tools, as in the case of certain mechanics, to pay union dues, to furnish their own uniforms, or to provide the use of an automobile, as was the situation in the case of *Raymond E. Kershner, supra*. Such expenditures may, of course, be deducted under section 23 of the Internal Revenue Code of 1939 for the purpose of computing net income, provided the taxpayer does not elect, as petitioner did in the instant case, to take in lieu thereof the standard deduction provided in section 23 (aa).

In reaching the above conclusion, we are not unmindful of the fact that Congress, in certain revenue legislation, has seen fit to use the terms "officers" and "employees" in conjunction in referring to Federal and State personnel, whereas in section 22 (n) (1) of the 1939 Code reference is to an "employee" only. See section 22 (a) of the Internal Revenue Code of 1939, wherein gross income is defined as including income in the form of salaries, wages, or compensation derived from personal services as "an officer or employee" of a State or political subdivision, and section 201 (a) of the Revenue Act of 1917, wherein the compensation or fees of "officers and employees under the United States, or any State, Territory, or the District of Columbia" were exempted from taxation thereunder. The use of the terms in those statutes was for the particular purpose in the one case of specifically including in gross income the salaries, wages, or compensation of all individuals receiving salaries, wages, or other compensation for performing services for a State or political subdivision, whether they were denominated officers or employees; and in the other instance, that of excepting from taxation the compensation of all individuals who were performing services in connection with, or as a part of, the essential governmental functions of the Federal Government, a State, or a political subdivision thereof, and whether they

might be termed officers or employees. See *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514. We find in those provisions, however, no basis for assuming or concluding that such use of the term "officer" in conjunction with the term "employee" for the purposes indicated has anything to do with or is indicative of the meaning and intent of section 22 (n) (1).

*Decision will be entered for the respondent.*